# IN THE COURT OF APPEALS OF IOWA

No. 18-2119
Filed April 3, 2019

**IN THE INTEREST OF D.F. and M.S.,**
**Minor Children,**

**D.S., Mother,**
　　　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights. **AFFIRMED.**

Karen A. Taylor, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Lynn Vogan of Youth Law Center, Des Moines, guardian ad litem for minor children.

Jean Baker of Jean M. Baker Law Office, West Des Moines, attorney for minor children.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

A mother appeals the juvenile court order terminating her parental rights. We find clear and convincing evidence supports the termination and termination is in the children's best interests.

### I.    Background Facts & Proceedings

D.S. is the mother of D.F., born in 2003, and M.S., born in 2007.  The family resided with J.F., father of D.F.  The family came to the attention of the Iowa Department of Human Services (DHS) in April 2017, when the mother was charged with public intoxication and child endangerment after biting M.S. during an argument over a cell phone.[1]  In June, DHS received a complaint the mother was using methamphetamine and was frequently absent from the home for days or weeks at a time.  The father was feeling overwhelmed and experiencing financial difficulties; he was hospitalized at the time for having made threats of self-harm while intoxicated.  The children ran away from home for brief periods, would not follow rules, and exhibited behavioral problems.

In late July, the mother was arrested on possession of methamphetamine charges after a traffic stop where she was a passenger in a stolen car.  The children were removed from the mother's custody and placed with the father.  On October 4 the children were adjudicated in need of assistance (CINA).

In November, the father and children were evicted from their home and moved to a shelter.  In December, when the family's shelter time was up, the

---

[1] Multiple DHS and police investigations occurred in 2014 relating to domestic-abuse allegations, rages, and similar behaviors.  Alcohol, substance abuse, or both was a factor in each incident.

children were removed from the father's custody and placed in separate foster homes. Starting in February, M.S. was placed at a youth shelter. In April 2018, the children were placed together in a single foster home.

The mother was incarcerated multiple times on a variety of charges. When not incarcerated, she did not have housing. The mother only attended a total of ten visits from the time of removal and only one visitation in 2018, on February 28. While incarcerated, she initiated a single collect call to the children, and some video chats occurred due to the foster parents' facilitation of the contact. When she was not incarcerated, the mother did not provide contact information to the children or DHS or make efforts to contact or see the children. The mother did not contribute to the financial support of the children throughout the CINA case. The only treatment attended by the mother was required during incarceration or for her criminal probation, and she was dismissed and returned to general incarceration after attending while intoxicated. The parents prioritized their relationship with each other over their children. It appears the children have not looked to the mother to parent them in a long time and do not trust her care.

In July, the court waived further reasonable efforts due to the mother's lack of engagement, the children's ages, the level of needs, and the surrounding circumstances. On October 22, the court held a permanency review and termination hearing. The court heard testimony from the DHS social worker, the family support worker, the foster mother, the father, and the mother. D.F. wrote a letter to the court explaining the child's desired result. On November 25, the

juvenile court terminated the mother's parental rights pursuant to section 232.116(1)(b) and (e) (2018).[2] She appeals.

## II.    Standard of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Where there is clear and convincing evidence, there is "no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted). The paramount concern in termination proceedings is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).

## III.    Sufficiency of the Evidence

The mother contends the State did not prove the grounds for termination under section 232.116(1)(b) or (e). "When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm." *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

The children were adjudicated CINA in October 2017, and they have been removed from the mother's physical custody since July 2017. The final element requires clear and convincing evidence the mother has not maintained significant

---

[2]  The court also terminated the parental rights of J.F. and any putative father of D.S. The supreme court dismissed J.F.'s appeal as untimely.

and meaningful contact with the children for the past six months and has not made reasonable efforts to resume care of the children despite the opportunity to do so. Iowa Code § 232.116(1)(e)(3); *In re C.F.-H.*, 889 N.W.2d 201, 205 (Iowa 2016). Significant and meaningful contact requires an affirmative assumption of the duties of a parent, including financial obligations, continued interest in the children, genuine effort to comply with permanency plan requirements, effort to maintain communication, and to establish and maintain a place of importance in the children's lives. Iowa Code § 232.116(1)(e)(3). The State must show the parent has not made reasonable efforts to resume care of the children. *C.F.-H.*, 889 N.W.2d at 806.

We determine there is clear and convincing evidence the mother has not maintained significant and meaningful contact with the children. Her last visit was in February, over seven months before the termination hearing. It appears she did not affirmatively assume any of the duties of a parent from the time the children were removed from her custody, not providing financial contributions and not asking about the children's lives and activities on the occasions she was in contact. Moreover, the record demonstrates the mother did not make a genuine effort to comply with permanency plan requirements to maintain sobriety and seek mental-health treatment. When not incarcerated, she did not seek employment or housing and her whereabouts and contact information were unknown to DHS and the children. She has not established or maintained a place of importance in the children's lives, to the point the children expressed concern about visiting her in person. We determine there is sufficient evidence in the record to support termination of the mother's parental rights under section 232.116(1)(e).

### IV.    Best Interests of the Children

The mother claims the court erred in terminating her parental rights as it is not in the best interests of the children.  We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2); *In re B.T.*, 894 N.W.2d 29, 33 (Iowa Ct. App. 2017).  Based on the record here, the foster placement is clearly the best placement for the children's long-term nurturing and growth.  Both children have made great progress mentally and emotionally in the care of their foster family and are able to be children with support and encouragement.

Nor do any of the exceptions in section 232.116(3) apply.  Both children are old enough to object to the termination, and neither does.  The children love their mother when she is sober, but they also recognize they cannot rely on the mother to meet their needs and wish for the mother's rights to be terminated.  We agree with the children and the court and find termination of the mother's rights is in the children's best interests.

**AFFIRMED.**